## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL COWELS and MICHAEL MIMS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| THE FEDERAL BUREAU OF | ) |
| INVESTIGATION, CHRISTOPHER WRAY, | ) |
| and PAULA WULFF, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs Michael Cowels and Michael Mims (together, "Plaintiffs") bring this action for injunctive and declaratory relief against the Federal Bureau of Investigation (the "FBI"), Christopher Wray in his official capacity as Director of the FBI, and Paula Wulff in her official capacity as Chief of the FBI Office of the General Counsel's Forensic Science Law Unit.

## NATURE OF THE ACTION

1.      In 1994, Plaintiffs were convicted by a Massachusetts state court jury of murder in the first degree of a woman named Belinda Miscioscia.  Both were sentenced to life imprisonment.  In February 2015, based on DNA evidence not available at the time of trial, the Massachusetts Supreme Judicial Court vacated their convictions and remanded their cases for new trial.  *See Commonwealth v. Cowels*, 470 Mass. 607 (2015), a copy of which is attached as Exhibit A.

2.      In April 2015, shortly after their convictions were vacated, both Plaintiffs, each of whom had served over 20 years in prison, were admitted to bail.  Both have been out of prison awaiting a new trial since then.  Plaintiffs are currently scheduled to be retried on September 19, 2018.

3.      In 2017, a DNA profile was obtained from a condom that had been found by police near the victim's body in 1993.  The DNA profile does not match either Plaintiff and may be that of the individual who committed the murder for which Plaintiffs are about to retried, and for which they have always maintained their innocence.

4.      Plaintiffs asked the Commonwealth of Massachusetts to submit the DNA profile to the FBI's Combined DNA Index System ("CODIS") to determine if it matches a known individual.  The Commonwealth objected, but on December 4, 2017 the Massachusetts Superior Court ordered the Commonwealth to submit the DNA profile to CODIS (the "DNA Order").  A copy of the DNA Order is attached as Exhibit B.

5.      Based on the DNA Order, the Commonwealth uploaded the DNA profile into the state level of CODIS and requested that the FBI accept the upload of the profile into the national level of CODIS.  The FBI refused to so.  The FBI has also refused the Commonwealth's separate request to perform a so-called "keyboard search," in which a DNA profile is compared to the DNA profiles in CODIS without the new profile being saved into CODIS.

6.      The FBI's refusals are unlawful under the Administrative Procedures Act (the "APA") and violate Plaintiffs' constitutional rights under the Fourteenth Amendment to due process, including their right to present evidence of third-party guilt in their upcoming retrial, and under the Sixth Amendment, including their rights under the Compulsory Process Clause.

7.      Plaintiffs seek an order requiring Defendants to promptly accept the DNA profile for upload into the national level of CODIS, or, in the alternative, an order requiring Defendants to promptly perform a keyboard search of the DNA profile.  Plaintiffs further seek a judicial determination that the DNA Profile is eligible for upload to the national level of CODIS and/or

2

eligible for performance of a keyboard search, and that the DNA Profile is attributable to a putative perpetrator of Ms. Miscioscia's murder.

## THE PARTIES

8.      Plaintiff Michael Cowels resides in Massachusetts.  He is a defendant in the case of *Commonwealth v. Michael Cowels*, no. 1993-11090, currently scheduled for trial in the Massachusetts Superior Court commencing September 19, 2018.

9.      Plaintiff Michael Mims resides in Massachusetts.  He is a defendant in the case of *Commonwealth v. Michael Mims*, no. 1993-111148, currently scheduled for trial in the Massachusetts Superior Court commencing September 19, 2018

10.      Defendant the FBI is an agency of the Department of Justice of the United States.

11.      Defendant Christopher Wray is sued in his official capacity as Director of the FBI.  As Director of the FBI, Mr. Wray is responsible for ensuring the FBI's compliance with the Federal DNA Identification Act (the "Federal DNA Act"), 34 U.S.C. § 12592 *et seq.*, the statute granting the FBI authority to establish a national DNA index, and promulgating procedures relating to that index.

12.      Defendant Paula Wulff is sued in her official capacity as Chief of the FBI Office of the General Counsel's Forensic Science Law Unit.

## JURISDICTION AND VENUE

13.      This action seeks review of final federal agency action pursuant to 5 U.S.C. §§ 702 and 704.  This Court has jurisdiction to review final federal agency action pursuant to 28 U.S.C. § 1331.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because substantially all of the events giving rise to Plaintiffs' claims occurred in this District, and because Plaintiffs reside in this District.

## FACTUAL ALLEGATIONS

### Plaintiffs Face Retrial After Their Previous Convictions Were Vacated Based On DNA Evidence

15.     In June 1993, the body of Ms. Miscioscia was found behind a woodworking shop in Chelsea, Massachusetts.  Ms. Miscioscia had been stabbed multiple times.

16.     In December 1994, Plaintiffs were convicted by a Massachusetts state court jury of the murder of Ms. Miscioscia.  Both were sentenced to life imprisonment without any chance of parole.

17.     In February 2015, the Supreme Judicial Court vacated Plaintiffs' convictions based on DNA evidence proving that the blood found on the key physical evidence relied on by the Commonwealth at trial (towels allegedly used to clean up after the murder) had not come from either Plaintiff or Ms. Miscioscia.  *See Cowels* (Ex. A), 470 Mass. at 614.

18.     The Commonwealth plans to retry Plaintiffs for Ms. Miscioscia's murder.  The retrial is scheduled to begin on September 19, 2018.

### An Unknown DNA Profile Was Recovered From A Condom Found Near Ms. Miscioscia's Body

19.     When Ms. Miscioscia's body was found in 1993, a used condom was found nearby (the "Condom").  Massachusetts state police collected the Condom in the course of the investigation into Ms. Miscioscia's death.  Police examined the Condom and tested it for hair and fibers and the presence of seminal fluid.  While police determined that the Condom contained seminal fluid, the seminal fluid was not tested for DNA prior to Plaintiffs' 1994 trial.

20.     Plaintiffs have always maintained their innocence.  Neither Plaintiff had a motive to kill Ms. Miscioscia, and neither had ever been accused of a crime of violence against a person prior to being charged with Ms. Miscioscia's murder.

21.     In the months leading up to her murder, Ms. Miscioscia had been involved with a number of men, two of whom got into a physical fight over her, and at least one of whom was aware that she was seeing other men.  The latter, by his own admission, became "upset" the night of the murder, when Ms. Miscioscia stood him up for the fifth or sixth time.  He then lied to his friends as to his whereabouts at the time of her murder.

22.     In January 2017, at the request of the Commonwealth, the Massachusetts Department of State Police Crime Laboratory conducted DNA testing on certain evidence related to Ms. Miscioscia's death, including swabs taken of the *inside* of the Condom in 1993.

23.     The DNA testing of the swabs taken of the *inside* of the Condom obtained a male DNA profile (the "Condom DNA Profile").

24.     The Condom DNA Profile is not consistent with the DNA profile of Plaintiff Michael Cowels or the DNA profile of Plaintiff Michael Mims.  *See* DNA Testing Report, a copy of which is attached as Exhibit C, at 2.

## CODIS

25.     The Federal DNA Act authorizes the FBI Director to establish a national identification index of DNA records.  In response to the Federal DNA Act, the FBI created CODIS, a software system and DNA database that operates at the local, state, and national levels.  CODIS is used, among other things, to compare unknown DNA profiles obtained from crime scenes to those of known individuals.

26.    The state level of CODIS, which is administered by participating states, is called

the State DNA Index System ("SDIS").  The national level of CODIS, which is administered by

the FBI, is called the National DNA Index System ("NDIS") and contains the DNA profiles

contributed by federal, state, and local participating laboratories.  As of December 2017, NDIS

contained more than 16 million DNA profiles.

27.    Operational and procedural issues pertaining to NDIS that are not addressed by

the Federal DNA Act are addressed by the FBI as NDIS's administrator.  The FBI's current

procedures with respect to NDIS are set forth in the National DNA Index System (NDIS)

Operational Procedures Manual (the "NDIS Manual"), a copy of which is attached as Exhibit D.

28.    Pursuant to the NDIS Manual, a DNA record[1] is eligible for inclusion in NDIS if

it "originate[s] from and/or [is] associated with a crime scene," "the source of which is

attributable to a putative perpetrator."  *See* NDIS Manual (Ex. D) at 27, § 3.1.1.1.

29.    Pursuant to the FBI's publications and operating procedures, accepting the upload

into NDIS of a DNA profile that has already been uploaded to SDIS is clerical and non-

discretionary.

30.    In general, a new DNA profile is compared to those in NDIS by uploading the

new profile into NDIS.  However, pursuant to what is called a "keyboard search," a DNA profile

can be compared to the DNA profiles already in NDIS without being uploaded to NDIS.

_____

[1] A DNA record is "[a] database record that includes the DNA profile as well as data required to
manage and operate NDIS, i.e., the Originating Agency Identifier which serves to identify the
submitting agency; the Specimen Identification Number; and DNA personnel associated with the
DNA profile analyses."  NDIS Manual (Ex. D) at 91.

**The FBI Refuses To Accept The Condom DNA Profile For Upload To NDIS
Or To Perform A Keyboard Search Of The Condom DNA Profile**

31.     After learning that the Commonwealth had obtained an unknown DNA profile from the Condom, Plaintiffs requested that the Commonwealth submit the Condom DNA Profile to CODIS.  The Commonwealth refused to do so.

32.     In October 2017, Plaintiffs filed a motion in the Massachusetts Superior Court asking the court to order the Commonwealth to submit the Condom DNA Profile to CODIS and to provide Plaintiffs with any resulting information.  The Commonwealth opposed the motion, arguing that the Condom DNA Profile was ineligible for CODIS because it was not "attributable to a putative perpetrator."

33.     On December 4, 2017, citing concerns about Plaintiffs being denied access to potentially exculpatory evidence, the Superior Court (Roach, J.) ordered the Commonwealth to "immediately . . . submit the [Condom DNA Profile] to the Combined DNA Index System ('CODIS'), and to provide [Plaintiffs] with the results of that submission."  DNA Order (Ex. B) at 3.

34.     In response to the DNA Order, the Condom DNA Profile was uploaded to the Massachusetts SDIS.  On January 2, 2018, the Condom DNA Profile was searched against the other DNA profiles in the Massachusetts SDIS and no matches were returned.

35.     On January 17, 2018, Dorothea Collins, the Massachusetts State Police Crime Laboratory DNA Unit Supervisor, emailed the FBI that the Commonwealth had been ordered by the Superior Court to upload the Condom DNA Profile to CODIS and that she believed the Condom DNA Profile to be ineligible for SDIS and NDIS.  Ms. Collins asked the FBI if it would accept the Condom DNA Profile for upload into NDIS.

36.     On January 26, 2018, Ms. Wulff, Chief of the FBI Office of the General Counsel's Forensic Science Law Unit, emailed Ms. Collins that the FBI would not accept the Condom DNA Profile into NDIS because "it does not appear to be attributable to the putative perpetrator" and because "the condom did not contain the victim's DNA."

37.     On January 30, 2018, Suffolk County Assistant District Attorney Thomas Flanagan, the prosecutor responsible for retrying Plaintiffs, informed Plaintiffs, through counsel, that notwithstanding the Superior Court's DNA Order, the FBI had refused to permit the Condom DNA Profile to be uploaded into NDIS.

38.     On January 30, 2018, ADA Flanagan also informed the Superior Court of the FBI's defiance of the DNA Order.  Counsel for Plaintiffs then requested that the Superior Court intervene and attempt to compel the FBI to comply with the DNA Order.  The Superior Court responded by indicating that it believed that it was without authority to compel the FBI to comply with a state court order.  The Superior Court informed Plaintiffs' counsel that in order to obtain the relief to which the Superior Court believed Plaintiffs are entitled, Plaintiffs would have to persuade the FBI directly or seek an appropriate order in federal court.

39.     Plaintiffs' counsel then asked ADA Flanagan to renew his request to the FBI that it comply with the DNA Order, which he did.  As part of his renewed request, on February 12, 2018, ADA Flanagan emailed Ms. Wulff to ask the FBI to conduct a "keyboard search" of the Condom DNA Profile "out of respect for the Court's prior order."

40.     On February 15, 2018, Ms. Wulff responded to ADA Flanagan.  Ms. Wulff asserted that the Commonwealth's upload of the Condom DNA Profile to the Massachusetts SDIS "complied with" the Superior Court's order, that the FBI would not accept the Condom DNA Profile for upload into NDIS because "nothing forensically demonstrates a link between

the victim and the subject condom to consider the obtained profile as coming from a putative

perpetrator," and that the FBI would not conduct a keyboard search because the Condom DNA

Profile was not "eligible for NDIS and therefore [was] not eligible for a manual keyboard

search." A copy of Ms. Wulff's refusal is attached as Exhibit E.

### The FBI Has the Ability To Easily Upload The Condom DNA Profile To NDIS Or Perform A Keyboard Search Of The Condom DNA Profile

41. The National DNA Act does not preclude the FBI from uploading the Condom

DNA Profile to NDIS or performing a keyboard search of the Condom DNA Profile.

42. The National DNA Act authorizes the FBI Director to establish an index of data

including "analyses of DNA samples recovered from crime scenes" and provides no limitation

on which DNA samples recovered from crime scenes may be eligible for upload to the index and

no limitation on the performance of keyboard searches on such DNA samples. *See* 34 U.S.C.

§ 12592.

43. Uploading a DNA profile to NDIS is neither costly nor time-consuming for the

FBI. Similarly, performing a keyboard search of a DNA profile is neither costly nor time-

consuming for the FBI.

44. The procedures set forth in the NDIS Manual do not preclude the FBI from

uploading the Condom DNA Profile to NDIS or performing a keyboard search of the Condom

DNA Profile.

45. The procedures set forth in the NDIS Manual restrict the uploading of unknown

DNA profiles to NDIS to those "originat[ing] from and/or . . . associated with a crime scene,"

"the source of which is attributable to a putative perpetrator." NDIS Manual (Ex. D) at 27,

§ 3.1.1.1.

9

46.     The Condom DNA Profile is attributable to the putative perpetrator of Ms. Miscioscia's murder because the Condom was recovered with and in close proximity to Ms. Miscioscia's body during the investigation of her murder, and the Condom DNA Profile obtained from inside the Condom is that of an unknown male.

47.     Because the Condom DNA Profile is attributable to the putative perpetrator of Ms. Miscioscia's murder, it is eligible for upload to NDIS.

48.     The procedures set forth in the NDIS Manual provide that "[a] manual keyboard search is an exceptional mechanism initiated by, and with the approval of, the NDIS Custodian to compare a target DNA record against DNA records contained in NDIS without resulting in the target record being included or uploaded into [NDIS]."  NDIS Manual (Ex. D) at 50, § 5.3.  The procedures set forth no restrictions on the performance of a keyboard search by the FBI other than it "shall not be used in place of the routine upload and search."

49.     If the Condom DNA Profile is not eligible for the "routine upload and search," it is eligible for a keyboard search.

50.     Because Defendants have wrongly determined that the Condom DNA Profile is "not attributable to a putative perpetrator," refused to accept the Condom DNA Profile for upload to NDIS, and refused to perform a keyboard search of the Condom DNA Profile, Defendants have injured Plaintiffs in denying them access to potentially exculpatory information as Plaintiffs await retrial for murder.  Moreover, Defendants are denying the Commonwealth access to information that may permit the individual responsible for Ms. Miscioscia's murder to be brought to justice.  Defendants are undermining the essential role of CODIS in identifying and bringing to justice perpetrators of crimes, and protecting against wrongful convictions.

## CAUSES OF ACTION

## COUNT ONE: INJUNCTIVE RELIEF

51.     Plaintiffs reallege and incorporate herein all of the allegations set forth in paragraphs 1-50 above.

52.     The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

53.     The APA also provides a remedy to "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction."  5 U.S.C. § 706(2)(A)-(C).

54.     Defendants have unlawfully withheld and unreasonably delayed acceptance of the Condom DNA Profile for upload to NDIS, and performance of a keyboard search of the Condom DNA profile.

55.     Defendants' determination that the Condom DNA Profile is "not attributable to a putative perpetrator," Defendants' refusal to accept the Condom DNA Profile for upload to NDIS, and Defendants' refusal to perform a keyboard search of the Condom DNA Profile are arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law.

56.     The Condom was found next to Ms. Miscioscia's body, collected by the police as evidence, and maintained as such for nearly 25 years.  Swabs from *inside* the Condom were then submitted by the Commonwealth for DNA testing in 2017 because the Commonwealth believed the swabs included probative evidence and would help prove the case against Plaintiffs.  When the DNA testing of the swabs proved exculpatory as to Plaintiffs and the Superior Court ordered that the Condom DNA Profile be submitted to CODIS, the FBI determined that the Condom

DNA Profile is "not attributable to a putative perpetrator" and refused to accept the Condom

DNA Profile for upload into CODIS.  In other words, the Condom was treated as attributable to a

putative perpetrator until it became apparent that it constituted exculpatory evidence as to

Plaintiffs.  Defendants are of the view that the only putative perpetrators are Plaintiffs, who have

been wrongfully accused of murder.  Defendants have chosen to disregard all of the other

potential putative perpetrators, including those who have been identified by Plaintiffs.  That

"nothing forensically demonstrates a link between the victim and the subject condom" is not

probative whatsoever given that the Condom DNA Profile was obtained from swabs taken from

*inside* the Condom.  That the Condom was found next to Ms. Miscioscia's body, and that the

Commonwealth has regarded it as probative for the past 25 years, are facts that have been

disregarded by the FBI.

57.    Defendants' determination that the Condom DNA Profile is "not attributable to a

putative perpetrator," Defendants' refusal to accept the Condom DNA Profile for upload to

NDIS, and Defendants' refusal to perform a keyboard search of the Condom DNA Profile are

contrary to Plaintiffs' constitutional rights under the Fourteenth Amendment to due process,

including their right to present evidence of third-party guilt in their upcoming retrial, and under

the Sixth Amendment, including their rights under the Compulsory Process Clause.

58.    Defendants' determination that the Condom DNA Profile is "not attributable to a

putative perpetrator," Defendants' refusal to accept the Condom DNA Profile for upload to

NDIS, and Defendants' refusal to perform a keyboard search of the Condom DNA Profile are in

excess of statutory jurisdiction as they exceed the boundaries of the FBI's statutory authority

pursuant to the Federal DNA Act.

59.     Plaintiffs have no administrative remedy as to Defendants' unlawful determination that the Condom DNA Profile is "not attributable to a putative perpetrator," Defendants' refusal to accept the Condom DNA Profile for upload to NDIS, and Defendants' refusal to perform a keyboard search of the Condom DNA Profile.

60.     An injunction must issue ordering Defendants to promptly accept the Condom DNA Profile for upload into NDIS, or, in the alternative, to promptly perform a keyboard search of the DNA profile, and to promptly report to Plaintiffs all resulting findings.

## COUNT TWO: DECLARATORY RELIEF

61.     Plaintiffs reallege and incorporate herein all of the allegations set forth in paragraphs 1-60 above.

62.     An actual controversy exists between Plaintiffs and Defendants concerning whether the Condom DNA Profile is "attributable to a putative perpetrator," whether the Condom DNA Profile must be accepted by Defendants for upload to NDIS, and whether a keyboard search of the Condom DNA Profile must be performed.

63.     The APA authorizes actions for declaratory judgments where no special statutory review proceeding is applicable, which is the case here.  5 U.S.C. § 703; *see also* 28 U.S.C. § 2201.

64.     Plaintiffs seek a declaration that the Condom DNA Profile is eligible for upload to NDIS and/or eligible for performance of a keyboard search, and that the Condom DNA Profile is attributable to a putative perpetrator of Ms. Miscioscia's murder.

## **PRAYER FOR RELIEF**

Plaintiffs request that the Court enter judgment for Plaintiffs on the above Claims, and specifically request that the Court:

1.     Order Defendants to promptly accept the Condom DNA Profile for upload into NDIS, or, in the alternative, order Defendants to promptly perform a keyboard search of the Condom DNA profile, and order Defendants to promptly report to Plaintiffs all resulting findings.

2.     Declare that the Condom DNA Profile is eligible for upload to NDIS and/or eligible for performance of a manual keyboard search, and that the Condom DNA Profile is attributable to a putative perpetrator of Ms. Miscioscia's murder.

3.     Grant Plaintiffs such other relief as the Court may deem just and proper.


March 26, 2018                                    Respectfully submitted,

                                                 MICHAEL COWELS
                                                 By his attorneys,

                                                 /s/ David J. Apfel
                                                 David J. Apfel (BBO# 551139)
                                                 Ezekiel L. Hill (BBO# 692715)
                                                 Kathleen McGuinness (BBO# 693760)
                                                 Goodwin Procter LLP
                                                 100 Northern Ave.
                                                 Boston, Massachusetts 02210
                                                 Tel.:  617.570.1000
                                                 Fax.:  617.523.1231
                                                 dapfel@goodwinlaw.com
                                                 ehill@goodwinlaw.com
                                                 kmcguinness@goodwinlaw.com

                                                 MICHAEL MIMS
                                                 By his attorney,

                                                 /s/ Elliot M. Weinstein
                                                 Elliot M. Weinstein (BBO# 520400)

14

83 Atlantic Avenue
Boston, MA 02110
Tel.:  617.367.9334
elliot@eweinsteinlaw.com